Chaim B. Book, Esq. (CB4652)
Moskowitz, Book & Walsh, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999

**11 CV 0061**

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ECF Case

JOANNE KNOESEL,

      Plaintiff,

vs.

NEW YORK UNIVERSITY,

      Defendant.

Civil Action No. 11 CV 0061 (JGK)

**COMPLAINT**

Plaintiff Joanne Knoesel, by her attorneys, Moskowitz, Book & Walsh, LLP, as and for her complaint against defendant, New York University, alleges as follows:

### PARTIES

1. At all times hereinafter mentioned, plaintiff was and still is a resident of New York State.

2. Upon information and belief, at all times hereinafter mentioned, defendant, New York University, ("NYU") was and still is a private university and transacts business and owns and maintains several buildings in New York County, New York.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action, pursuant to 29 U.S.C § 2601 et seq., as this action involves federal questions regarding plaintiff's rights under the Family and Medical Leave Act ("FMLA").

4. Defendant is subject to personal jurisdiction in that defendant transacts and does business in New York.

5. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b) and (c), because all of the events that are the subject matter of this lawsuit occurred within this district.

## SUMMARY OF FACTS

6. Plaintiff was employed by NYU as a nurse at its Student Health Center from April 2004 until she was terminated on September 16, 2010, and as an adjunct professor from August 2010 until she was terminated on September 16, 2010.

7. Plaintiff always performed her work in an overwhelmingly positive manner and received positive comments regarding her work, as well as other accolades.

8. Plaintiff had been approved in advance to take FMLA leave and took her FMLA leave from June 18, 2010 to August 23, 2010, after having foot surgery.

9. On August 30, 2010, when plaintiff returned to work after completing her FMLA leave, she was told by her supervisor that things were difficult over the summer because she had been out on FMLA leave and that Kathy Gunkel, the Director of Nursing, had been unhappy with plaintiff's absence.

10. Thereafter, Ms. Gunkel created a pretextual reason to terminate plaintiff's employment in retaliation for her absence on FMLA leave.

11. During the Labor Day weekend, on September 4, 2010, plaintiff received a call from Quest labs regarding an abnormal lab result and immediately informed the physician on duty (Dr. Don Han) of the call. Dr. Han was aware of the patient, having spoken with the provider (Shannon Haines, Nurse Practitioner) who ordered the test a few days before. Ms. Haines asked for Dr. Han's advice on the day she ordered the test and he advised her to treat the patient prophylactically and wait for the test results to see if the medication needed to be changed or stopped.

12. When the results came back on September 4, 2010, plaintiff informed Dr. Han, who told her that the patient was already being treated and he was aware of her case. Dr. Han did not check the medical records or document the results. Plaintiff also sent an internal message to Ms. Haines to let her know of the test result.

13. Plaintiff later spoke to Ms. Haines who acknowledged that she had received plaintiff's message but did not order medication for the patient prior to having the test results (as Dr. Han had advised her). Ms. Haines called the patient on September 9th to see how she was feeling. The patient told Ms. Haines that she was feeling better but Ms. Haines ordered an antibiotic as treatment starting that day. Plaintiff told Ms. Haines that Dr. Han thought the patient was already being treated.

14. Upon information and belief, the protocol at the NYU health center for the situation that occurred on September 4th is for a provider to sign out any patients for follow up to the covering doctor working. Ms. Haines did not follow this protocol.

15. On September 15, 2010, plaintiff was called into Kathy Gunkel's office to meet with Ms. Gunkel and a representative from Human Resources. When plaintiff sat down, a termination letter was on the table in front of her. The letter stated that plaintiff did not tell

anyone about a critical lab result that was reported to her on September 4th and she was being terminated for failing to follow protocol.

16. At the September 15th meeting, Gunkel accused plaintiff of not informing anyone of the test results she had received on September 4th. Plaintiff then explained that she did tell Dr. Han immediately after getting the phone call and later spoke to Ms. Haines about this patient. The Human Resources representative then took the termination letter from plaintiff and told her that she would be suspended that day until they could speak with Dr. Han. Plaintiff was asked for her NYU ID card and escorted to the elevator.

17. On September 16th, Dr. Han was called into a meeting with Kathy Gunkel, Will Marcotte (Human Resources), Barbara Cardelli-Arroyo (Human Resources) and Patty Delorenzo (Vice President) and was asked about the events of September 4th. Dr. Han informed them that plaintiff told him immediately after receiving the phone call of the test result, that it had been an extremely busy day and that he had not checked the patient's chart to see if she was being treated because he had assumed that the patient was being treated. Dr. Han further stated that Ms. Haines had spoken to him about the patient and she never asked him to follow up on the lab result, as protocol required. Finally, Dr. Han told them that it was he that did not follow protocol and it was his fault.

18. That same day, plaintiff was called went to meet with Ms. Gunkel and the Human Resources representative, and again a letter was placed on the table in front of her, stating that she was being terminated for not documenting the conversation that she had with Dr. Han on September 4th. Plaintiff protested and stated that Dr. Han did not document the conversation either and that Ms. Haines did not sign the patient out to Dr. Han, which also violated protocol. Plaintiff was told that she was to blame for disrupting patient care.

19. Upon information and belief, the protocol for nurses who receive lab results on weekends is to discuss the results with the physician on duty that day, which is what plaintiff in fact did on September 4th. Upon information and belief, the protocol does not require documentation of the call from the laboratory or the subsequent discussion with the physician.

20. It is clear from the manner in which plaintiff was treated and terminated by NYU for an alleged infraction of an undocumented rule that no other NYU employee had been disciplined for, that the reason given for her termination was just a pretext.

21. NYU's excuse for plaintiff's termination, combined with its timing, indicates that it was in retaliation for plaintiff's exercise of her legal rights to take medical leave.

22. Plaintiff was also terminated from her appointment as an adjunct professor in NYU's College of Nursing, which she had started one week earlier.

23. As a result of her termination, plaintiff lost her salary and benefits, which included a benefit for tuition remission for her son who was a junior at NYU's College of Arts and Sciences.

24. Plaintiff alleges that NYU's unlawful, discriminatory and retaliatory practices have caused her severe financial hardship, have harmed her reputation, and have significantly diminished her earning capacity.

25. Plaintiff alleges that she has undergone severe emotional pain and suffering due to NYU's unlawful, discriminatory and retaliatory practices.

26. Plaintiff alleges that her medical condition (ventricular arrythmia) worsened immediately after the above-described events and was due to NYU's unlawful, discriminatory and retaliatory practices.

## AS AND FOR A FIRST CAUSE OF ACTION
(Violation of FMLA)

27.  Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 26 as if fully set forth herein.

28.  Defendant unlawfully discriminated and retaliated against plaintiff with respect to the terms, conditions and privileges of her employment because of her decision to avail herself of leave under the FMLA.

29.  Defendant intentionally and willfully discriminated against plaintiff by terminating her and retaliating against her because of her FMLA leave, in violation of her rights secured by 29 U.S.C. Sec. 2601 et seq.

30.  As a result of defendant's wrongful actions, plaintiff has suffered and continues to suffer loss of earnings and employment benefits, damage to reputation and career, severe mental anguish and stress, humiliation and pain.

## RELIEF SOUGHT

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(a)  that Plaintiff be awarded compensatory damages in an amount to be determined at trial of this action, together with pre-judgment interest;

(b)  that Plaintiff be awarded back pay and front pay in an amount to be determined at trial of this action, together with pre-judgment interest;

(c)  that Plaintiff be awarded statutory damages;

(d)  that Plaintiff be awarded punitive damages;

(e)  that Plaintiff be awarded emotional distress damages;

(f)  that Plaintiff be awarded attorneys' fees and costs; and

(g)  that Plaintiff be awarded such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

Dated:  New York, New York
January 3, 2011

MOSKOWITZ, BOOK & WALSH, LLP

By: *[signature]*
Chaim B. Book (CB 4652)
Attorneys for Plaintiff
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999